UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO GUDINO CORTEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:24-cv-00771-HBK<br><br>ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 12, 17) |

Rocio Gudino Cortez ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 12, 17-18). For the reasons set forth more fully below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and remands the matter to the Commissioner of Social Security for further administrative proceedings.

////

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

## I.     JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on November 2, 2021, alleging a disability onset date of February 27, 2020 in both applications. (AR 282-96). Benefits were denied initially (AR 82-127, 180-84) and upon reconsideration (AR 128-77, 191-97). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on June 13, 2023. (AR 44-81). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 16-38) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.     BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 51 years old at the time of the hearing. (AR 49). She testified that she completed tenth grade. (AR 49). She lives with her son and his fiancée. (AR 50). She has a work history as a driver and group worker. (AR 50-54, 75). Plaintiff testified that she has arthritis, cramping, trembling, and pain in her hands; back and neck pain; hip pain and weakness; right knee pain; anxiety; depression; and problems with concentration and focus. (AR 54-64). She reported she could sit in a chair for 10-20 minutes before she has to change positions, stand for 15-20 minutes before she needs to sit down, walk for "maybe" half a block, and lift five pounds at most. (AR 65-67). Plaintiff testified that she has problems opening jars, and she spends at least 6 hours in an 8-hour day laying down. (AR 67-68).

## III.     STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

3

416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 27, 2020, the alleged onset date.  (AR 21).  At step two, the ALJ found that Plaintiff has the following severe impairments: cervical and lumbar spine disorders with lumbar radiculopathy; bilateral hip disorders; right knee disorder; thyroid disorder; bilateral hand disorders; obesity; depression; anxiety; and posttraumatic stress disorder ("PTSD").  (AR 22).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 22).  The ALJ then found that Plaintiff has the RFC to

> perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows.  The claimant is limited to performing up to four hours of standing and/or walking, the rest sitting without limitation, [in an] eight-hour workday.  The claimant needs a position change opportunity as often as every thirty minutes for one to two minutes.  The claimant is precluded from all ladder, rope, and scaffold climbing, and all dangerous work hazards exposure, and is limited to performing the remaining postural motions occasionally. The claimant is precluded from all exposure to extreme heat, humidity, and cold conditions, and is limited to frequent, but not constant, bilateral upper extremity handling and fingering tasks. The claimant is limited to routine, simple work tasks involving one to three step work tasks, work not requiring a fast

> assembly quota pace (i.e., fast assembly line environment where one's work impacts work down the line),and work involving only occasional required work interactions with coworkers, supervisors, and the public. The claimant will be off task up to three percent of the workday due to monetary symptom distractions.

(AR 24). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 29). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager and inspector. (AR 30-31). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 27, 2020, through the date of the decision. (AR 31).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1).

1. Whether the ALJ erred in failing to include moderate limitations assessed by Kara Cross, Ph.D. into the RFC despite finding the opinion persuasive or provide adequately supported reasons for rejecting those portions of the opinion;
2. Whether the ALJ properly considered Plaintiff's physical symptom claims; and
3. Whether the assessed RFC was impermissibly vague.

(Doc. No. 12 at 9-21).

## VII. DISCUSSION

**A. Medical Opinions**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical

6

findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial

7

evidence. *Id*. at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In February 2022, consultative psychological examiner Kara Cross, Ph.D. opined that Plaintiff had moderate limitations in her ability to understand, remember, carry out simple one or two-step job instructions over an 8-hour day 40-hour work week without emotionally decompensating; "to do detailed and complex tasks"; maintain regular attendance in the workplace and perform activities on a consistent basis; and relate to co-workers and the public in an appropriate manner. (AR 615-16). The ALJ found Dr. Cross' opinion persuasive as it was "largely consistent with [the state agency medical consultants' opinions] and because they are consistent with and supported by the evidence, including clinical findings and observations of Dr. Cross and claimant's treatment providers …." (AR 29).

Plaintiff argues the "ALJ's failure to accommodate these moderate limitations [in the assessed RFC] or otherwise explain her departure from Dr. Cross' opinion constituted clear legal error." (Doc. No. 12 at 17). Specifically, Plaintiff argues the ALJ did not provide any reasons for discounting Dr. Cross's assessment of moderate limitations in Plaintiff's ability to understand, remember, carry out simple one or two-step job instructions over an 8-hour day 40-hour work week without emotionally decompensating, maintain regular attendance in the workplace, and perform activities on a consistent basis. (*Id*.). The Court agrees. A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

8

Initially, Defendant appears to take issue with what they construe as Plaintiff's argument, namely, "that her severe mental impairments, which cause moderate limitations, will translate into preclusions in the ALJ's functional capacity assessment." (Doc. No. 17 at 14-15). (citing HALLEX (Hearings and Appeals Litigation Law Manual) I-2-5-20). However, as recently noted in Eastern District of California, this type of argument does not "resolve the inquiry" because the "question is whether the ALJ, having accepted [the] opinion, appropriately translated the moderate limitations from that opinion into concrete restrictions in the RFC." *Harrell v. Kijakazi*, 2021 WL 4429416, at *6-7 (E.D. Cal. Sept. 27, 2021). Next, Defendant argues the ALJ's RFC finding reasonably incorporated Dr. Cross's moderate limitations on Plaintiff's ability to understand, remember, carry out simple one or two-step job instructions over an 8-hour day 40-hour work week without emotionally decompensating, and maintain regular attendance in the workplace and perform activities on a consistent basis, by limiting Plaintiff to "routine, simple work tasks involving one to three step work tasks, [] not requiring a fast assembly quota pace (i.e., fast assembly line environment where one's work impacts work down the line)" and noting Plaintiff would be off task up to 3% of the workday due to "momentary symptom distractions." (Doc. No. 17 at 15-17 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in medical testimony)); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

First, in support of the argument that the ALJ properly considered Dr. Cross's moderate limitation in Plaintiff's ability to understand, remember, and carry out simple one or two-step job instructions over an 8-hour day, 40-hour week without emotionally decompensating, Defendant contends that the ALJ appropriately found Dr. Cross's opinion persuasive, together with the state agency psychological opinions of Dr. Uwe Jacobs, Ph.D. and David Biscardi, Ph.D., and appropriate translated their "specific functional limitations" into the RFC. (Doc. No. 17 at 15-16). Of particular relevance here, Defendant notes that the RFC properly incorporates Dr. Jacobs' opinion that Plaintiff could "carry out and sustain performance of 1-3 step tasks (but would

9

become overwhelmed if the procedures were more complicated." (*Id.*; AR 148).  Defendant is correct that, ultimately, it is the responsibility of the ALJ to determine the RFC.  (Doc. No. 17 at 15 (citing 20 C.F.R. § 404.1527(d)(2); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  However, pursuant to the regulations, the ALJ must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from *each* doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (emphasis added) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).  Plaintiff does not challenge the ALJ's finding that the opinions of Dr. Jacobs or Dr. Biscardi were persuasive, nor does she challenge whether their opined limitations were properly incorporated into the RFC.  Rather, Plaintiff correctly notes that the assessed RFC finding Plaintiff capable of simple work tasks involving one to three step work tasks arguably does not account for Dr. Cross's opinion that Plaintiff was moderately limited in her ability to perform even one to two step tasks.  (Doc. No. 12 at 19); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations")

Second, as to Dr. Cross's assessment of moderate limitations in attendance, Defendant is correct that the Ninth Circuit held in *Stubbs-Danielson* that the "ALJ's RFC finding properly incorporated the limitations … related to pace and the other mental limitations regarding attention, concentration, and adaption." *Stubbs-Danielson*, 539 F.3d at 1174.  However, "the Ninth Circuit and district courts in the Ninth Circuit have held that *Stubbs-Danielson* does not control in cases where the limitations relate to functional areas other than concentration, persistence, and pace, such as social functioning and attendance." *Panziera v. Berryhill*, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (collecting cases).  After review of the most recent case law, the Court agrees.

> [U]npublished district course case law (which is not controlling, but is more factually on point) is split but tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations [the doctor] identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption.  The district court case law in support of Defendant's position is sparser and more outdated.  The weight of the more recent case law tends to refute the notion that a

> limitation to simple/routine tasks with limited public contact adequately accounts for other limitations in social interaction, maintaining attendance, completing a normal workday without interruptions from a psychiatric condition, and handling work related stressors.

*Harrell*, 2021 WL 4429416 at *6 (internal citations omitted); *see also Macias v. Saul*, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases and holding that a limitation to simple one- or two- step tasks does not account for attendance limitations); *Berenisia Madrigal v. Saul*, 2020 WL 58289, at *5-6 (E.D. Cal. Jan. 6, 2020) (restriction to simple, routine tasks dos not account for assessed limitations in ability to complete a normal workday or workweek without interruptions from psychiatric condition and the ability to deal with stress or changes encountered in the workplace); *Millsap v. Kijakazi*, 2023 WL 4534341, at *5-6 (E.D. Cal. July 13, 2023) (rejecting argument that limitation to simple, routine tasks in the RFC accounted for moderate mental limitations in opinion the ALJ found persuasive, including ability to complete a normal workday or workweek); *Sahyoun v. Saul*, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that limitation to work involving simple and repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from psychiatric condition, and handling work-related stress); *but see Messerli v. Berryhill*, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to simple routine tasks adequately accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, and complete a normal workday/workweek without interruptions); *Schmidt v. Colvin*, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013) (finding RFC limitation to simple unskilled work adequately captured opined moderate limitations in completing a normal workday and work week).

Based on the foregoing, the Court finds the RFC limiting Plaintiff to routine, simple work tasks involving one to three step work tasks, not requiring a fast assembly quota pace (i.e., fast assembly line environment where one's work impacts work down the line), and allowing that Plaintiff would be off task up to 3% of the workday, does not account for Dr. Cross's findings of moderate limitations in Plaintiff's ability to ability to understand, remember, carry out simple one or two-step job instructions over an 8-hour day 40-hour work week without emotionally

decompensating, and maintain regular attendance in the workplace and perform activities on a consistent basis. The ALJ's failure to either provide reasons, supported by substantial evidence, to reject those limitations or to properly incorporate those limitations into the assessed RFC, constitutes error. *See Robbins*, 466 F.3d at 886; *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the] opinion, but the RFC failed to take into account all of the limitations identified by [the doctor], and the ALJ failed to explain why she did not include the limitations in the RFC. As a result, the ALJ erred in formulating the RFC."). Further, on the record before the Court it cannot conclude that the error was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination").

On remand, the ALJ must reconsider Dr. Cross's opinion along with the relevant medical evidence.

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 25). Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction.[2] (Doc. No. 12 at 9-15). The Court agrees.

As to her claimed physical limitations, the ALJ found (1) the clinical evidence was inconsistent with Plaintiff's subjective reports, and (2) her "course of treatment" did not support her allegations.[3] (AR 25-27). First, regarding her "course of treatment" for her alleged physical limitations, the ALJ noted her doctor described her thyroid condition as "moderately controlled with treatment," she was administered an injection to treat her hip pain that provided 90% relief for several weeks, and she reported "good progress" with her physical therapy. (AR 27 (citing AR 629 (thyroid moderately controlled), 635 (same), 651 (same), 715 (same), 726 (same), 766 (received hip injection), 771 (ordered physical therapy), 773 (hip injection deemed 90%

---

[2] Plaintiff appears to limit her argument to the ALJ's consideration of "pain and physical dysfunction"; therefore, the Court declines to consider any arguments regarding the ALJ's consideration of Plaintiff's mental health symptom claims, including Defendant's argument that the ALJ properly rejected her mental health symptom claims because she failed to comply with treatment. (Doc. No. 17 at 11-12; AR 27-28); *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider an issue not raised in plaintiff's opening brief).

[3] Defendant argues the ALJ properly considered the prior administrative medical findings (PAMFs) of the State agency consultants in evaluating Plaintiff's subjective physical and mental symptom." (Doc. No. 17 at 12-13). However, the Court declines to consider this "reason" as it was not offered by the ALJ in the decision as reasons to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

effective), 920 (received hip injection), 928 (injection in left hip deemed 90% effective but in constant pain in right hip, 994 (right hip injection deemed 90% effective and physical therapy progressing well)). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). However, as noted by Plaintiff, the record indicates she reported the effects of that injection started to "wear off" after three weeks, and she testified that her more recent injection provided relief for two weeks. (Doc. No. 12 at 14 (citing AR 58, 775). The ALJ also cites a single report in June 2023 to her treating provider that Plaintiff was "progressing well" at physical therapy (AR 994); however, as noted by Plaintiff, she complained of 7/8 out of 10 pain at her most recent physical therapy progress report also in June 2023. (AR 951). Finally, regardless of any reported improvement in her thyroid issue or hip pain, the ALJ fails to offer any evidence of sustained improvement in Plaintiff's consistent reports of back pain. (*See, e.g.,* AR 995 (reporting 9/10 lumbar spine pain in July 2023)). For all of these reasons, any purported effectiveness in Plaintiff's "course of treatment," standing alone, does not constitute substantial evidence to discount the entirety of her reported pain and physical dysfunction. This was not a clear and convincing reason, supported by substantial evidence, to discount her symptom claims.

Second, the ALJ found clinical findings in the record were inconsistent with Plaintiff's physical symptom claims, and in support of this finding the ALJ cited "minimal" evidence of degenerative changes on the imaging study of the lumbar spine, normal range of motion, normal appearance of thyroid gland, clear lungs, normal heart rate and rhythm, normal motor strength and tone, normal sensation at extremities, normal deep tendon reflexes, reduced range of motion of the lumbar spine, abnormal sensation at the right lower extremity suggestive of radiculopathy, negative straight leg tests, and normal gait. (AR 26-27). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical

evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reason given by the ALJ for discounting Plaintiff's symptom claims was not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's allegations of pain and physical dysfunction. On remand, the ALJ must reconsider the entirety of Plaintiff's symptom claims.

**C. Additional Assignment of Error**

Finally, Plaintiff argues the ALJ's RFC finding was "impermissibly vague" because it did not specify whether Plaintiff would remain on task during her position changes. (Doc. No. 12 at 19-21). In light of the need to reconsider Dr. Cross's medical opinion and the relevant medical evidence, and Plaintiff's symptom claims, it is unnecessary for the Court to consider this challenge. On remand, the ALJ is instructed to reconsider the relevant medical opinion evidence and conduct a new sequential analysis, including a reevaluation of Plaintiff's symptom claims, and a reassessment of the RFC and step five finding if necessary.

**D. Remedy**

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings. (Doc. No. 12 at 21); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). The Court agrees. Here, the ALJ improperly considered the medical opinion evidence and Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims and the medical opinion evidence. The ALJ should order additional consultative

examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is GRANTED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 17) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

Dated:    September 25, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE